FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ MAY 12 2006 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

MICHAEL GLADDEN,

        Petitioner,

-against-

DALE ARTUS, Superintendent of Clinton
Correctional Facility Annex,

        Respondent.
----------------------------------------X

**REPORT AND RECOMMENDATION**
**04-CV-3202 (CBA)(LB)**

**BLOOM, United States Magistrate Judge:**

The Honorable Carol B. Amon, United States District Court Judge, referred this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to the undersigned for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

## BACKGROUND

On July 20, 1998, Michael Wrotten (a.k.a. Tyson) stole a chain from Lashawn Elijah (a.k.a. "Cripple") in the vicinity of Atkins and Blake Avenues in Brooklyn, New York. Tr. at 20-21, 35-37.[1] Soon afterwards, Elijah returned to that location accompanied by petitioner and another man and they confronted Wrotten's brother, Jerry, about the robbery. Tr. at 50-51. Jerry Wrotten was on the corner standing with Roland McCarthy and Michael Eccles. Tr. at 47. In the course of confronting Jerry Wrotten about the robbery, petitioner and the other man who accompanied Elijah pulled out guns and shot several times. Tr. at 139. Roland McCarthy was

---

[1] "Tr. at _" denotes reference to the trial transcript filed as Respondent's Exhibit B.

1

fatally shot twice, once in the chest and once in the back. Tr. at 117-118.

When police spoke with Elijah about the incident, Elijah identified petitioner by his street name, "Big", as one of the shooters who accompanied him on July 20, 1998. Tr. at 170-73. On May 26, 1999, the police apprehended petitioner. Petitioner first denied and subsequently admitted to being present when Roland McCarthy was shot. Tr. at 136. Petitioner made a written and videotaped statement to the police admitting his involvement in the shooting, but claimed that he had not fired the gunshots that had hit McCarthy. Tr. at 137-40, 145-48.

Petitioner was charged in King's County Supreme Court with Murder in the Second Degree as well as with Criminal Possession of a Weapon in the Second Degree. Michael Eccles testified at petitioner's trial, as well as Roland McCarthy's girlfriend, a medical examiner, arresting officer Detective Thomas Maher, and a detective from the Police Department's ballistics unit. No witnesses were called on petitioner's behalf. On May 8, 2000, petitioner was convicted of one count of Murder in the Second Degree and one count of Criminal Possession of a Weapon in the Second Degree. On May 19, 2000, petitioner was sentenced to an indeterminate sentence of twenty years to life for the murder conviction and to five years for the weapon possession charge, the two sentences to run concurrently.

## PETITIONER'S POST-CONVICTION MOTIONS

Following petitioner's sentencing on May 19, 2000, petitioner appealed to the New York Supreme Court, Appellate Division, Second Department and raised the following claims: (1) that petitioner's Sixth Amendment right to confront the witnesses against him, as articulated in Bruton v. United States, 391 U.S. 123 (1968), was violated when the court admitted testimony

2

about statements made by petitioner's co-defendant who had been tried separately; (2) that the trial court improperly denied petitioner's request for a "missing witness charge;" (3) that the trial court improperly refused to redact petitioner's statement about an uncharged crime; and (4) that petitioner's sentence was excessive.

On May 16, 2002, the Appellate Division affirmed petitioner's conviction and sentence. People v. Gladden, 748 N.Y.S.2d 170, 298 A.D.2d 462 (N.Y. App. Div. 2002). The Apellate Division held that the admission of testimony about the co-defendant's statement was proper because defense counsel had "opened the door to the admission" and because it was accompanied by a jury instruction that the testimony was being offered not for its truth, but to explain the basis for petitioner's apprehension and questioning. Id. at 463. The Appellate Division also held that if the trial court did err, that the error was harmless because the testimony at issue merely corroborated petitioner's admissions made in writing and on videotape. All other grounds raised on appeal were likewise rejected.

Petitioner was denied leave to appeal by the Court of Appeals on January 23, 2003. People v. Gladden, 99 N.Y.2d 582 (2003). Petitioner's subsequent application for a writ of error coram nobis on the ground of ineffective assistance of appellate counsel, filed on May 1, 2003, was denied by the Appellate Division, Second Department, on July 28, 2003. People v. Gladden, 307 A.D.2d 367 (N.Y. App. Div. 2003). On September 11, 2003, petitioner filed for leave to appeal to the Court of Appeals, which was denied on April 20, 2004. People v. Gladden, 2 N.Y.3d 762 (2004).

## THE INSTANT HABEAS CORPUS PETITION

Petitioner seeks a writ of habeas corpus under 28 U.S.C. §2254 on the following grounds:

(1) Petitioner's conviction was obtained in violation of his right to confront witnesses against him, because the trial court permitted introduction of a non-testifying witness's statement.

(2) Petitioner's conviction was obtained in violation of his right to due process, because the trial court refused to grant petitioner a missing witness charge when the prosecution did not call an eyewitness whose testimony may have been favorable to petitioner's defense.

(3) Petitioner's conviction was obtained in violation of his right to due process because the trial court did not redact part of petitioner's statement to the police.

(4) Petitioner was deprived of the effective assistance of appellate counsel because appellate counsel failed to appeal petitioner's conviction on the grounds that petitioner was not present for side bar conferences that occurred during the voir dire.

(5) Petitioner's conviction was obtained in violation of his right to due process because of improper statements made during the prosecution's summation.

## DISCUSSION

Petitioner's claims are governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254 (2005). For claims that have been adjudicated on the merits in state court proceedings, a petitioner must show that the state court proceedings:

> 1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254 (d).

In Williams v. Taylor, the Supreme Court held that a state court decision is "contrary to" clearly established federal law if a state court 1) "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or 2) "decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." 529 U.S. 362, 402, 405 (2000). As to the "unreasonable application" clause of the AEDPA, habeas relief is warranted only "if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 407.

The Supreme Court has ruled that the reasonableness of the application of the law is to be assessed objectively rather than subjectively. Id. at 409-10. In addition, the Court cautioned that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410 (emphasis in original). Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Bell v. Cone, 535 U.S. 685, 694 (2002). The Second Circuit has explained that while "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Francis S. V. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 889 (3d Cir. 1999)).

5

## A. Timeliness of the Petition

The AEDPA provides that a prisoner must file a federal habeas corpus petition challenging a state court conviction within one year of the date the judgment becomes final. 28 U.S.C. § 2244(d)(1)(A). A judgment is considered final upon "the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or - if the prisoner elects not to file a petition for certiorari - the time to seek review via certiorari has expired." Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001). The AEDPA provides three alternative start dates to calculate the one year limitation period under certain specified circumstances.[2] In addition, under extraordinary circumstances, the one year period may be equitably tolled. Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2001).

The Court of Appeals denied petitioner leave to appeal his conviction on January 23, 2003. People v. Gladden, 99 N.Y.2d 582 (2003). The statute of limitations for filing the instant petition began on April 23, 2003, when that judgment became final. See Williams v. Artuz, 237 F.3d 147, 150-51 (2d Cir. 2001). The statute of limitations then tolled between May 1 and July 28, 2003, while the Appellate Division considered petitioner's writ of error coram nobis. 28 U.S.C. § 2244(d)(2).

Petitioner next contends that the statute of limitations tolled while he sought leave to appeal the Appellate Division's denial of his petition for a writ of error coram nobis. In 2001,

---

[2]The statute provides that the one-year limitation period may begin running from the date that an impediment to filing the petition is removed. 28 U.S.C. § 2244(d)(1)(B). Alternatively, where applicable, the date on which a claimed constitutional right was initially recognized by the Supreme Court and made retroactive may start the limitation period. 28 U.S.C. § 2244(d)(1)(C). Lastly, the date on which the factual predicate of the claim could have been discovered with due diligence may begin the limitation period. 28 U.S.C. § 2244(d)(1)(D). None of these provisions are applicable here.

the Second Circuit held that "the denial of a petition for a writ of error coram nobis is not appealable to the Court of Appeals." Hizbullahankhamon v. Walker, 255 F.3d 65, 70 (2d Cir. 2001). However, in 2002, New York amended its statute governing appeals of error coram nobis decisions, making a denial of a writ of error coram nobis a ground for discretionary appeal to the Court of Appeals. See, 2002 N.Y. Laws ch. 498, § 1 (effective Nov. 1, 2002), codified at N.Y. C.P.L. § 450.90(1); see also Hernandez v. Greiner, 305 F. Supp. 2d 216, 223, n.9 (E.D.N.Y. 2004). Thus petitioner's September 11, 2003 application seeking leave to appeal the Appellate Division's denial of his application for a writ of error coram nobis was "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2). That motion continued to toll the statute of limitations until the Court of Appeals denied petitioner a certificate to appeal on April 20, 2004.

This petition for a writ of habeas corpus was filed 142 days into the one-year period of limitation on July 26, 2004. Thus, the instant petition is timely.

## B. Petitioner's Sixth Amendment Claim

Petitioner claims that the trial court improperly admitted Detective Thomas Maher's testimony about Lashawn Elijah's statement describing petitioner's involvement in the shooting of Ronald McCarthy. In allowing the testimony, the trial court followed the holding of Tennessee v. Street, 471 U.S. 409 (1985), permitting a co-defendant's statement to be introduced for a purpose other than for the truth of the matter asserted. Petitioner claims that in allowing Maher's testimony regarding Elijah's statement, the trial court unreasonably applied clearly established Federal Law as set forth in the Supreme Court's decisions in Crawford v. Washington, 541 U.S. 36 (2004), Bruton v. United States, 391 U.S. 123 (1968), and Cruz v. New York, 481 U.S. 186 (1987).

7

Petitioner cannot rely on Crawford here because in United States v. Logan, 419 F.3d 172 (2d Cir. 2005), the Second Circuit reaffirmed the holding of Tennessee v. Street. In Logan, a police officer testified about statements made by Logan's co-defendants to police during an interrogation. The officer's testimony was deemed admissable as non-hearsay evidence, introduced not for the truth of the matter asserted in the statement but to demonstrate a conspiracy to present a similar alibi to the police. The Second Circuit held that

> [a]s in Street, the mere fact that the content of [the co-defendants'] statements cast doubt on Logan's innocence does not bring those statements within the ambit of Sixth Amendment protection under Crawford. Since [the co-defendants'] statements were not offered to prove the truth of the matter asserted, introducing them through [a police officer's] third-party testimony did not violate the Confrontation Clause. Id. at 178.

Petitioner's Sixth Amendment claim here is quite similar to the unsuccessful claim raised by the defendant in Logan. Petitioner claims his constitutional rights were violated when the trial court allowed Detective Maher to testify that petitioner's co-defendant, Elijah, had made a statement to police that he observed petitioner "pull out guns and start shooting." 298 A.D. 2d 462, 463. Respondent maintains that Elijah's statement to Maher was not admitted for the truth of the matter asserted, but was admitted to demonstrate that the police had a reason for telling petitioner, during interrogation, that he had been identified as being at the crime scene. Tr. at 171-173.

Given the Supreme Court's holding in Tennessee v. Street that "the trial judge's instructions were the appropriate way to limit the jury's use of that evidence in a manner consistent with the Confrontation Clause," 471 U.S. at 417, the trial court herein did not apply a rule "contrary to" clearly established Federal law. Although Maher's testimony regarding Elijah may have been prejudicial to petitioner, the trial court properly instructed the jury to regard

8

Elijah's statement as an explanation for how Detective Maher conducted his investigation. Tr. 172 ("[R]emember, members of the jury, unless Elijah comes in here and talks, you can't take this as truth because it's not reliable... You don't know if it's true or not, but this is the basis of the officer's actions."). The trial court's instructions were clear, and thus admission of Detective Maher's testimony about Elijah's statement was not contrary to or an unreasonable application of clearly established Federal law.

### C. Petitioner's Claim Regarding Denial of a Missing Witness Charge

Petitioner claims his due process rights were violated because Jerry Wrotten, who was present and survived the shooting, was not called by the prosecution as a witness at trial and the court did not give the jury a "missing witness" charge. A "missing witness" charge would have permitted the jury to draw an adverse inference against the prosecution for failing to call Wrotten. See United States v. Caccia, 122 F.3d 136, 138-39 (2d Cir. 1997) (affirming conviction and describing an appropriate "missing witness" jury instruction). Such an instruction would have been warranted if Wrotten were within the control of the prosecution and if he would have provided material testimony. Caccia, 122 F.3d at 138. Also, petitioner bore the burden in seeking the missing witness charge of demonstrating at trial "that such witness can be expected to testify favorably to the opposing party." People v. Keen, 94 N.Y.2d 533, 539 (N.Y. 2000) (quoting People v Gonzalez, 68 N.Y.2d 424, 429 (N.Y. 1986)).

"[W]hether a missing witness charge should be given lies in the sound discretion of the trial court." U.S. v. Mittelstaedt, 31 F.3d 1208, 1215-16 (2d Cir.1994) (affirming denial of a missing witness charge; reversing some counts on other grounds). Here, the Appellate Division held that "the trial court properly denied [petitioner's] request for a missing witness charge."

9

Gladden, 748 N.Y.S.2d at 172.

Petitioner claims that because Wrotten was wounded in the same shooting that killed Roland McCarthy, and because Wrotten gave descriptions of the gunmen to police, that he was "under the control" of the prosecution. However, "the fact that the witness initially provided information about the crime, or even identified the defendant, does not constitute indicia of control." Goberdhan v. Greiner, No. 00-CV-1198, 2003 WL 22670892, at *4 (E.D.N.Y. Oct. 30, 2003).

A request for a missing witness instruction may be denied when "the witness is not under the party's control such that the witness would be expected to testify in the party's favor." Keen, 94 N.Y.2d at 539. The trial court's decision not to give a missing witness charge was proper here. The prosecution represented that Wrotten could no longer identify who shot him and Roland McCarthy, and petitioner did not demonstrate that Wrotten's testimony would be adverse to the prosecution's case. Tr. at 206-12. Wrotten was not under the prosecution's "control," as he was equally available to petitioner and to the People. The Second Circuit has "suggested that where a witness is equally available to both sides, a missing witness charge is inappropriate." Caccia, 122 F.3d at 138. The trial court therefore properly exercised its discretion regarding a missing witness charge[3] and the Court's decision was not contrary to or an unreasonable application of clearly established Federal law.

---

[3] Defense counsel admitted that Elijah was not a missing witness. Tr. at 164 (" Defense counsel: The problem is Elijah is the co-conspirator. The Court: You can talk about that and his failure to be here. Defense Counsel: I can't because he is not a missing witness I don't believe.")

## D. Petitioner's Due Process Claims Regarding Redaction of his Statement to Police and Prosecutorial Misconduct

Petitioner claims his due process rights were violated when the trial court refused to redact a portion of petitioner's statement to police which was introduced into evidence. Petitioner's statement acknowledged that his brother was arrested with the gun that he had possessed on July 20, 1998. Petitioner claims that the trial court erred by refusing to redact the last sentence of petitioner's written statement - "Jermaine got arrested with my .38" - because it bore no relevance to a material fact in the case against petitioner, and because it was highly prejudicial.

This claim was unpreserved for appellate review. Petitioner's counsel requested to see the signed statement that petitioner gave to police before it was read aloud to the jury, however petitioner's counsel made no objection and did not ask the court to redact the statement. Tr. at 138. Thus, petitioner's claim is procedurally defaulted and cannot be reached on habeas review absent the showing of cause and prejudice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Petitioner makes no showing of cause and prejudice here.

Petitioner's claim that the prosecution made improper remarks during summation is also procedurally defaulted. The Appellate Division rejected this claim on the grounds that petitioner "failed to preserve this contention for appellate review in as much as no objections to the prosecutor's comments were made during summation." 298 A.D.2d 462, 463-4 (2d Dept. 2002). The Appellate Division further stated that if petitioner's claim was not procedurally defaulted, it was without merit because the prosecutor's remarks would not warrant a reversal. Id.

In the Second Circuit, "federal habeas review is precluded 'as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision.'" Velasquez v.

11

Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (quoting Harris v. Reed, 489 U.S. 255, 264 n.10 (1989)). The Second Circuit reaffirmed this principle in a case where, as in the case before this Court, "the Appellate Division prefaced its discussion of the merits of the claims by stating that 'in any event'... they were without merit." Glenn v. Bartlett, 98 F.3d 721, 725 (2d Cir. 1996), cert. denied, 520 U.S. 1180 (1997). Therefore petitioner's prosecutorial misconduct claim is procedurally barred and cannot be reviewed absent a showing of cause and prejudice for petitioner's default. No such showing of cause and prejudice has been made here.

### E. Petitioner's Claim of Ineffective Assistance of Appellate Counsel

Petitioner argues that his appellate counsel was ineffective for not raising his due process claim regarding not being present for side bar conferences with prospective jurors.

Habeas relief is available to remedy decisions that are "contrary to... clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d). There is no clearly established federal right to be present for sidebar conferences at a voir dire. It is a principle of federal constitutional law that a criminal defendant has the right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings. Faretta v. California, 422 U.S. 806, 819 n.15 (1975); Cohen v. Senkowski, 290 F.3d 485, 489 (2d Cir. 2002). "[T]he impaneling of the jury is one such stage." Tankleff v. Senkowski, 135 F.3d 235, 246 (2d Cir. 1998). However, the Supreme Court has recognized that the right to be present is not absolute; it is triggered only when the defendant's "presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Snyder v. Massachusetts, 291 U.S. 97, 105-06 (1934). Thus, there is no federal constitutional right for a defendant to be present "when presence would be useless, or the benefit but a shadow." Id. at 106-07; see also United States v.

Gagnon, 470 U.S. 522, 526-27 (1985) (presence of respondents and their counsel was not required at *in camera* discussion between judge and juror about juror's willingness to continue as an impartial juror because neither fundamental fairness nor respondents' opportunity to defend were compromised). Trial courts have broad discretion in conducting voir dire. Mu'Min v. Virginia, 500 U.S. 415, 415 (1991); Potts v. Georgia, 493, U.S. 876, 878 (1989) ("voir dire is a matter committed to the trial court's discretion"); Turner v. Murray, 476 U.S. 28, 37 (1986).

Petitioner's ineffective assistance of appellate counsel claim relies on People v. Antommarchi, 80 N.Y.2d 247 (1992), as establishing his right to be present for side bar conferences with prospective jurors. The right established in Antommarchi, however, arises from New York Criminal Procedure Law 260.20, not from clearly established Federal law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Moreover, even if the trial court had erred by excluding petitioner from side bar discussions during voir dire, the omission of such a claim on direct appeal would not rise to the level of constitutional ineffective assistance of counsel. To prevail on a claim of ineffective assistance of appellate counsel, petitioner must demonstrate "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. In this case, counsel based petitioner's appeal upon the Bruton claim discussed above, the trial court's refusal to grant a missing witness charge, prosecutorial misconduct, and the harshness of petitioner's sentence. Given the discretion afforded to trial courts to conduct

13

voir dire, appellate counsel cannot be said to have ignored an issue stronger than the issues which were presented.

A claim of ineffective assistance of appellate counsel also requires petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). "To establish prejudice in the appellate context, a petitioner must demonstrate that there was a 'reasonable probability' that his claim would have been successful before the state's highest court." Mayo v. Henderson, 13 F.3d at 534 (quoting Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992)). Here, petitioner cannot demonstrate "a reasonable probability" that his Antommarchi claim would have been successful. Therefore, the state court's rejection of petitioner's ineffective assistance of appellate counsel claim was not contrary to or an unreasonable application of clearly established Federal law.

## CONCLUSION

Accordingly, t is respectfully recommended that the instant petition for a writ of habeas corpus under 28 U.S.C. §2254 should be denied. Furthermore, as petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability should issue. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), *abrogated on other grounds,* United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for isssuing a certificate of appealability); see also Lucidore v. New York State Div. Of Parole, 209 F.3d 107, 112-113 (2d Cir. 2000), *cert. denied,* 531 U.S. 873 (2000).

# FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

SO ORDERED.

Lois Bloom
United States Magistrate Judge

Dated: May 9, 2006
Brooklyn, New York